IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

April 18, 2023 02:28 PM
ST-2022-CR-00076
**TAMARA CHARLES**
**CLERK OF THE COURT**



# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,     )     **CASE NO. ST-2022-CR-00076**
                            )
             Plaintiff,     )
vs.                      )
                            )     **JURY TRIAL DEMANDED**
JAMARI GUMBS,               )
                            )
             Defendant.     )
_____)

Cite as: 2023 VI Super 16U

## MEMORANDUM OPINION

¶1     **THIS MATTER** is before the Court on Defendant Jamari Gumbs' ("Gumbs" or "Defendant") Motion to Suppress, filed October 6, 2022. The People of the Virgin Islands ("People") did not file a response. This matter came on for hearing on March 14, 2023. The People were represented by Assistant Attorney General Eugene James Connor, Jr. Case agent Officer Joel Browne-Connors, also appeared. Defendant Gumbs appeared and was represented by Adam G. Christian, Esq. For the reasons set forth herein, the Court will grant Defendant's motion in part and deny it in part.

## BACKGROUND

¶2     Defendant Gumbs is charged with three counts in a five count Information that lodges charges Gumbs and his codefendant Emerson Nicolas.[1] The three counts relative to Gumbs are: Count Three, Unauthorized Possession of Firearm Ammunition, in violation of V.I. CODE ANN.

---

[1] The People charged Gumbs and former codefendant, Emerson Nicolas, in a five-Count Information, charging Nicolas in Counts One and Two, and Gumbs in Counts Three, Four, and Five. Former codefendant Nicolas is now deceased.

tit. 14 § 2256(a)(3)(4);[2] Count Four, Unauthorized Possession of Marijuana with Intent to Distribute, in violation of V.I. CODE ANN. tit. 19 § 604(a)(1); and Count Five, No V.I. Driver's License, in violation of V.I. CODE ANN. tit. 20 § 371(a).

¶3 Defendant Gumbs seeks to suppress the fruits of a vehicle search and statements Gumbs made at the scene of the incident. At the suppression hearing, the People called one witness: Virgin Islands Police Department ("VIPD") Officer Joel Browne-Connors ("Officer Connors").[3] No exhibits were admitted.

## FACTS

¶4 The Court gleaned the following facts from Officer Connors' testimony.

¶5 On March 11, 2022, between 1:00AM and 2:00AM, Officer Connors and his partner, Officer Joanna Stuart ("Officer Stuart"), were on patrol and noticed a blue Toyota Corolla ("Corolla" or "vehicle"), with dark tinted windows, failing to adhere to traffic laws. Specifically, Officer Connors noticed the Corolla was stopped at a red light on Alton Adams Drive at the intersection near Barbel Plaza, St. Thomas, VI. Officer Connors was stopped catty-corner to the Corolla. Connors was facing east, and the Corolla was facing north. Even though the Corolla had a green light, it did not proceed through the light. Once Connors' light turned green, he drove through Barbel Plaza and pulled up behind the Corolla. By that time the Corolla had a red light, but it then drove through the red light, turning right and heading east. Officer Connors followed the Corolla, and observed the vehicle was driving erratically, crossing the double yellow traffic lines. Officer Connors followed the Corolla up Raphune Hill. Connors turned on his blue patrol

---

[2] Defendant also filed a Motion to Dismiss Count Three on October 14, 2022, which the Court will address in due course.

[3] Officer Connors testified he has been employed by VIPD for a little over three (3) years, as a patrol officer.

car lights while he was passing by the trash bins midway up Raphune Hill, and the Corolla pulled over a bit further up the Hill, right before Al Cohen's mall.

¶6    Connors stopped the vehicle for having excessive tint, running a red light, and because it had crossed the double yellow lines. Connors spoke over his loudspeaker, instructing the two occupants to exit the vehicle. Officer Connors said the passengers did not exit the Corolla, and he saw some movement in the back seat of the vehicle, but he could not tell what the occupants were doing. At that time, Officers Connors and Stuart approached the Corolla with their weapons drawn because the occupants had failed to follow the initial command to step out of the car and because Connors saw movements in the vehicle when the occupants did not initially comply with the command to get out of the vehicle.

¶7    Two males exited the vehicle with their hands raised—Gumbs exited the driver's side of the vehicle and the other passenger[4] exited on the passenger's side, and they said, "don't shoot." After the occupants exited the vehicle, Officer Connors asked the driver for a driver's license, registration, and insurance. However, Gumbs did not have any of those items. Also, after the occupants exited the Corolla, Officer Connors noticed a mason jar filled with a green, leafy substance located on the middle console of the vehicle in plain sight.[5] The mason jar was in plain sight once Gumbs and the passenger exited the vehicle, because the incident occurred in an area lit with streetlights, the interior light was on inside the Corolla, and the front windows were rolled down.

---

[4] The passenger was Gumbs' former codefendant, later identified as Emerson Nicholas, who is now deceased.

[5] Officer Connors testified that the substance was field tested and tested positive for marijuana.

¶8    Once Gumbs exited the vehicle, Officer Connors frisked him. Officer Connors did not recall whether Gumbs was handcuffed and stated that Gumbs was not yet under arrest at that time, but that Gumbs was not free to leave the area and was sitting on the nearby guard rail.

¶9    When Officer Connors told Gumbs he was going to search the vehicle, Gumbs objected, but Officers Connors and Stuart performed the search anyway. During the search, Officer Connors found the following items: (1) a tool bag holding a power grinder and battery, found on the floor of the passenger-side front seat; (2) a black pellet handgun, found on the floor of the passenger-side back seat; (3) a black Gucci bag containing empty magazines and one cartridge of ammunition, found in the cab of the vehicle; (4) a bag containing an identification card with someone else's name on it, found in the cab of the vehicle; and (5) a black backpack containing several more mason jars[6] filled with a green, leafy substance, some U.S. currency, and some Trinidad currency, found in the trunk of the vehicle.

¶10    When asked about the items, Gumbs and the passenger stated the backpack found in the trunk was "our bag." Further, Gumbs and the passenger began discussing that the black Gucci bag was theirs, but that it had been acquired earlier in the day, seemingly implicating themselves in another crime that had occurred earlier that day. Upon hearing that utterance, Officer Connors read Gumbs and the passenger their *Miranda* rights, but Connors did not have a form for them to formally waive their rights on the scene. Officer Connors did not ask Gumbs any questions after reading him his rights, and he did not recall whether Gumbs made any further statements following such reading. After reading Gumbs and Nicolas their rights and putting them in the police unit, Gumbs and Nicolas kept talking, but Officer Connors does not recall what they said, nor what

---

[6] Officer Connors testified he was unsure exactly how many mason jars he found in the trunk of the vehicle.

statement either of them may have made. But neither Connors nor the responding detectives made note of what they may have said, and VIPD took no official statement from Gumbs (or Nicolas).

¶11    After the search of the vehicle, Officer Connors arrested Gumbs and Gumbs was taken to the police station. Gumbs was read his *Miranda* rights again once he was at the station, but Officer Connors did not ask any more questions.

## LEGAL STANDARD

¶12    In order to succeed in suppressing evidence under the Fourth Amendment or a statement under the Fifth Amendment, the burden of proof is on the defendant to establish a basis for his motion. *People v. Roa*, No. ST-17-CR-36, 2017 WL 2980185, at \*2 (V.I. Super. Ct. June 29, 2017) (citing *People of the Virgin Islands v. Lloyd*, 2015 V.I. LEXIS 122, \*6 (V.I. Super. Ct. Sept. 29, 2015)); *see also People v. Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at \*1 (V.I. Super. Ct. Nov. 14, 2017). Once the defendant shows a warrantless search or seizure occurred, the burden shifts to the government to show that each individual act constituting a search or seizure under the Fourth Amendment was reasonable. *Roa*, No. ST-17-CR-36, 2017 WL 2980185, at \*2. Similarly, in a motion to suppress a statement of the accused, once a defendant claims a violation of *Miranda* and "the accused alleges facts demonstrating that the accused was in custody and subject to interrogation, the burden shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda* and that the statement was voluntary." *Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at \*1 (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

## DISCUSSION

I. **The traffic stop, search of the Corolla, and ultimate arrest of Defendant did not violate Defendant's Fourth Amendment rights, so the fruits of these actions will not be suppressed.**

### a. Fourth Amendment – Legal Standard.

¶13    The Fourth Amendment to the U.S. Constitution guarantees the right of the people to be free from unreasonable searches and seizures. *People v. Woodley*, No. SX-15-CR-380, 2018 WL 3064404, at *3 (V.I. Super. Ct. June 20, 2018); U.S. CONST. amend. IV.[7] Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be executed pursuant to a search warrant based on probable cause. *People v. Pemberton*, 2019 VI SUPER 118, ¶¶ 6-7 (citing *Nicholas v. People*, 56 V.I. 718, 739 (V.I. 2012)). A warrantless search or seizure is *per se* unreasonable unless an exception applies. *Thomas v. People*, 63 V.I. 595, 605 (V.I. 2015) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).

¶14    The Fourth Amendment analysis typically proceeds in three stages. *People v. Joseph*, 2022 VI SUPER 12, ¶10. First, the Court determines whether a Fourth Amendment event, such as a search or a seizure, has occurred. *Id.*; *see also Woodley*, No. SX-15-CR-380, 2018 WL 3064404, at *3. Next, the Court considers whether that search or seizure was reasonable. *Id.* If the search or seizure was unreasonable, the Court must then determine whether the circumstances warrant suppression of the evidence. *Id.* "Reasonableness is an objective inquiry measured by examining the totality of the circumstances surrounding the search and the nature of the search itself." *People*

---

[7] The Fourth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954. *People v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87–88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1).

*v. Pemberton*, 2019 VI SUPER 118, ¶ 7 (quoting *Prentice v. People*, 64 V.I. 79, 89 (V.I. Super. Ct. 2016).

**b. The traffic stop was a lawful seizure under the Fourth Amendment.**

¶15     Defendant argues that it is unclear whether there was probable cause prior to the traffic stop and subsequent search of his vehicle to take such actions. At the hearing, Defendant reiterated he did not believe that the People carried their burden to prove the circumstances leading to the traffic stop were supported by the Fourth Amendment, arguing Connors' testimony was convoluted. The People countered that, pursuant to Officer Connors' testimony, it is apparent that Defendant ran a red light and continued to drive erratically thereafter and thus VIPD had grounds to conduct a traffic stop. For the following reasons, the Court finds the traffic stop was a lawful seizure under the Fourth Amendment.

¶16     The Virgin Islands Superior Court has acknowledged that a "traffic stop is a Fourth Amendment event." *Woodley*, No. SX-15-CR-380, 2018 WL 3064404, at *4. "For the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle, the driver and all passengers." *Id.* (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)) (citing cases) (internal quotations omitted). Even though "the police do not need a warrant to stop an automobile and conduct a brief investigation, the police must nonetheless have probable cause [or reasonable suspicion] to believe that a traffic violation has occurred before stopping a vehicle." *People v. Somme*, 2019 VI SUPER 95, ¶12 (V.I. Super. 2019) (quoting *People v. Torres*, No. SX-14-CR-457, 2015 WL 13579412, *3, 2015 V.I. LEXIS 96, *7 (Super. Ct. Aug. 15, 2015)).

¶17     Under the jurisprudence of the Fourth Amendment, it is the defendant's burden to show he was searched or seized without a warrant. *Roa*, No. ST-17-CR-36, 2017 WL 2980185, at *2. In

the instant matter, Gumbs has done so: it is unquestioned that Officer Connors effectively seized Defendant without a warrant when he pulled over the Corolla following alleged traffic violations. As such, the burden shifts to the People to show they were justified in such seizure and demonstrate VIPD had probable cause or reasonable suspicion to believe a traffic violation had occurred. *Id.* The People rely upon Officer Connors' testimony at the suppression hearing, that he and Officer Stuart witnessed an excessively tinted vehicle run a red light and then continue to drive erratically, crossing the double yellow traffic lines. The People argue this behavior provided probable cause for Officer Connors to turn on his blue patrol car lights, indicating Defendant should pull over. The People did not cite the specific traffic regulations Defendant allegedly violated to trigger Officer Connors to pull over the Corolla. However, the Virgin Islands Superior Court has previously stated that "running a red light would supply the officer with probable cause if the officer witnessed the infraction." *Somme*, 2019 VI SUPER 95, at ¶18 n.3 (citing *State v. Wilson*, 574 S.E.2d 93, 97-98 (N.C. Ct. App. 2002) ("A traffic stop made on the basis of a readily observed traffic violation such as speeding or running a red light is governed by probable cause.")).

¶18    As such, the Court finds that Officer Connors had probable cause to believe a traffic violation had occurred, because he personally witnessed Defendant run through a red light and further witnessed erratic driving. Accordingly, the Court finds Officer Connors' initial stop and effective seizure of Defendant was lawful under the appropriate Fourth Amendment standards.

### c.  VIPD's search of Defendant's vehicle was lawful.

¶19    In his written briefing, Defendant argues that it is unclear whether VIPD had probable cause to stop the vehicle, and therefore it is unclear whether the subsequent search of the vehicle was constitutional. At the hearing, Defendant maintained this argument, stating that Connors'

testimony was convoluted, and the People have not met their burden to show the traffic stop was legal. As has been discussed above, the Court finds the traffic stop was supported by probable cause and was therefore a lawful seizure under the Fourth Amendment.

¶20    One widely recognized exception to the warrant requirement is the "plain view doctrine," under which "the warrantless seizure of incriminating evidence is permissible when three conditions are met: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item's incriminating character must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself." *People v. Benjamin*, 2020 VI SUPER 34, ¶ 14 (quoting *People v. Heath*, 63 V.I. 80, 93 (V.I. 2015) and *Horton v. California*, 496 U.S. 128, 136–137 (U.S.1990)). The "plain-view doctrine has been applied where police are not searching for evidence, ... but nonetheless inadvertently come across something incriminating." *People v. Berkley*, 2019 VI SUPER 73, ¶ 51 (quoting *Horton*, 496 U.S. at 135) (internal brackets omitted). The plain view doctrine is permitted where it is "immediately apparent" to the police, based on experience, that they have incriminating evidence before them. *Id.* (citing *People v. Santana*, 63 V.I. 25, 31 (V.I. Super. Ct. 2014)).

¶21    Defendant argues that the law requires VIPD have probable cause prior to the seizure and search of a vehicle, but it is unclear whether such probable cause existed when Connors searched the vehicle Gumbs was operating. As discussed above, Officer Connors' seizure of the Corolla did not violate Gumbs' Fourth Amendment rights, as Connors witnessed Defendant run a red light and drive erratically, providing the requisite probable cause to pull over the vehicle. Additionally, Officer Connors testified that because the interior car lights were on, there was a streetlight nearby, and the Corolla's front windows were down, he had plain view of the mason jar on the vehicle's

center console. Officer Connors further testified that, upon seeing the contents of the mason jar, he immediately believed it to be marijuana.[8] The Court finds that Connors was not searching for contraband, but merely saw the mason jar while he was directing Defendant to exit the vehicle. As such, pursuant to the standard articulated for the plain view doctrine, (1) the Court finds that Officer Connors was justified in being in the location, because he was lawfully conducting a traffic stop, (2) the mason jar with a green leafy substance was in plain view , and (3) Officer Connors had the lawful right of access to the mason jar because he had seized the vehicle for the traffic stop. Therefore, pursuant to the plain view doctrine, the Court finds that Officer Connors was justified in seizing the mason jar of green leafy substance, field tested to be marijuana.

¶22     Another exception to the Fourth Amendment warrant requirement is the automobile exception, under which law enforcement may search an automobile without a warrant if probable cause exists to believe it contains evidence of criminal activity. *Melendez v. Virgin Islands*, 56 V.I. 244, 253 (2012) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002)). "The rationale behind this automobile exception to the warrant requirement is that 'the ready mobility of automobiles permits their search based only on probable cause.'" *People v. Lloyd,* No. SX-14-CR-080, 2015 WL 13579247, at *3, n.5 (V.I. Super. Ct. Sept. 29, 2015) (quoting *United States v. Polanco*, 48 V.I. 744, 749–50 (D.V.I. 2007) (citing cases)). Probable cause to search a vehicle exists when, "viewing the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lloyd*, No. SX-14-CR-080, 2015 WL 13579247, at *4 (quoting *Gresh v. Godshall*, 170 Fed. Appx. 217, 220 (3d Cir. 2006)).

---

[8] During closing arguments, Gumbs conceded that the mason jar with the green leafy substance was in open view.

¶23    After finding the mason jar filled with what he believed to be marijuana, Officer Connors informed Gumbs he would be searching the rest of the vehicle as well. Gumbs objected to the search and stated that he did not consent to the search, but Officer Connors nonetheless performed the search. The Court finds that the subsequent search of the remainder of the vehicle was justified under the circumstances, pursuant to the automobile exception to the warrant requirement. Officer Connors had plainly viewed what he believed to be marijuana, and he testified that seeing marijuana in the car led him to believe a crime was being or had been committed. Additionally, Officer Connors had just witnessed Defendant and his passenger rummaging in the backseat of the Corolla and refusing to exit the vehicle upon the officer's first request. The Court finds Officer Connors' decision to search the remainder of the vehicle was reasonable under the circumstances: finding what he believed to be marijuana as well as witnessing the behavior of the Defendant and his passenger gave Connors probable cause to search the remainder of the vehicle.

¶24    For these reasons, the Court finds Officer Connors' search of the vehicle was reasonable and did not violate the Fourth Amendment, pursuant to the plain view doctrine and the automobile exception to the warrant requirement.

### d.  Defendant's arrest was lawful under the Fourth Amendment.

¶25    In his written briefing, Defendant argues that it is unclear whether VIPD had the requisite probable cause, considering all pertinent circumstances, that he committed an identifiable crime. As such, Defendant argues that the arrest violated his Fourth Amendment rights.

¶26    Probable cause exists when, at the moment an arrest is made, officers have "facts and circumstances within their knowledge and of which they have reasonably trustworthy information that would sufficiently warrant a prudent man in believing that the suspect had committed or was

committing an offense." *Matthew*, 55 V.I. at 393 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (internal quotations omitted)). This "'flexible, commonsense' probable cause standard rests on whether a 'man of reasonable caution' would believe that the accused has committed a crime; it does not require that this 'belief be correct or more likely true than false.'" *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Id.* (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3rd Cir. 1990)).

¶27     The Court finds that Officer Connors' discovery of a mason jar filled with what he believed to be marijuana justified the following search of the entire vehicle. The Court further finds that the items found during the search of the vehicle justified Officer Connors in arresting Gumbs, because a reasonable officer would believe a crime had been committed upon finding multiple mason jars filled with a green leafy substance, a pellet gun, a round of ammunition, and a large amount of currency. As such, the Court finds Officer Connors had probable cause to search and subsequently arrest Gumbs, and these actions were not taken in violation of Defendant's Fourth Amendment rights.

**II.     Officer Connors had Defendant in custody and failed to *Mirandize* Defendant prior to interrogating him, in violation of his Fifth Amendment rights, so the statements made at the scene must be suppressed.**

    **a.  Fifth Amendment – Legal Standard.**

¶29     The Fifth Amendment to the United States Constitution states, in pertinent part, "no person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life,

liberty, or property, without due process of law . . ." U.S. CONST. amend. V.[9] *Miranda* warnings are required for custodial interrogations. *See Castillo v. People*, 59 V.I. 240, 264 (V.I. 2013) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). A suspect is "in custody" when he has been "deprived of freedom of action in any significant way." *Ramirez v. People*, 56 V.I. 409, 419 (V.I. 2012) (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). A suspect is subject to an "interrogation" when "the Defendant responds to express questioning or its functional equivalent—words or actions reasonably likely to elicit an incriminating response." *Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1.

### b. VIPD's custodial interrogation of Gumbs was a violation of his Fifth Amendment rights.

¶30 Defendant argues that it is unclear whether Gumbs was advised of his rights, and, if so, whether he knowingly and voluntarily waived those rights. At the suppression hearing, Defendant argued that VIPD asked questions about the items they found while searching the car, while Defendant was not free to leave. Defendant claims any statements made prior to Officer Connors reading Defendant his rights must be suppressed because the government failed to prove the statements were made knowingly and voluntarily, Defendant was in custody and not free to leave, and he was responding to questions asked by VIPD. The People counter that Defendant's statements regarding potential involvement in an incident earlier that day were voluntary and spontaneous utterances. Further, the People note Officer Connors did read Defendant his rights at the scene.

---

[9] The Fifth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954. *Simmonds v. People*, 59 V.I. 480, 491 (V.I. 2013) (citing Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561).

¶31    Based upon the testimony at the suppression hearing, the Court finds Officer Connors advised Defendant of his rights *after* he had asked Defendant numerous questions about the items found inside the vehicle and after Defendant made a potentially incriminating statement about a crime committed earlier that day. Further, Officer Connors testified that, while he was unsure whether Defendant was handcuffed, Gumbs would not have felt free to leave the scene during the vehicle search. As such, the Court finds that Defendant was in custody and Officer Connors interrogated him, prior to advising Defendant of his *Miranda* rights. Accordingly, the burden shifts to the People to prove they appropriately provided Defendant his *Miranda* rights or that Defendant's statements were voluntary. *Azzam*, No. ST-16-CR-232, 2017 WL 5514375, at *1.

¶32    During the suppression hearing, Officer Connors stated that Defendant's statements were in response to questions he asked, but that the statements were "voluntary" and that the statement regarding the incident earlier in the day was a "spontaneous utterance." Further, Officer Connors stated that he did not ask Defendant any questions after reading Defendant his rights, although he could hear Defendant and Emerson Nicolas conversing in the police cruiser. During argument, the People reiterated that the statements were voluntary and the reference to the earlier incident was a spontaneous utterance.

¶33    "[I]t is well established that a spontaneous utterance, not prompted by a police interrogation, made by a suspect who is plainly in custody is admissible even if the suspect has not waived his *Miranda* rights." *People v. Rojas*, No. ST-17-CR-278, 2018 WL 4352113, at *5 (V.I. Super. Ct. May 31, 2018) (quoting *Blyden v. People of the Virgin Islands*, 53 V.I. 637, 662 (V.I. 2010)). But in the instant matter, it is apparent that Gumbs made the statements in response to questions from VIPD. While the detail included may have been outside the scope of Officer

Connors' question, this does not minimize the fact that Connors was interrogating Gumbs prior to reading him his *Miranda* rights. As such, the Court finds the statement was not a spontaneous utterance, as it was prompted by questioning from VIPD. Further, since Gumbs had not yet been advised of his *Miranda* rights when he made these statements, he cannot be said to have knowingly and voluntarily waived such rights. As such, the Court finds that the People failed to carry their burden to prove the statements were voluntary. Accordingly, the Court finds VIPD questioned Gumbs in violation of his Fifth Amendment rights and any statements Defendant made prior to Officer Connors reading Defendant his rights must be suppressed.

## CONCLUSION

¶34    The Court finds that VIPD did not violate Gumbs' Fourth Amendment rights. The traffic stop was justified by probable cause because Officer Connors personally witnessed multiple traffic infractions. Further, Officer Connors having observed the mason jar with a green leafy substance, the search of the vehicle was constitutional pursuant to the plain view doctrine. The automobile exception to the warrant requirement gave Officer Connors authority to search the vehicle after he observed in plain view the mason jar filled with a green leafy substance. VIPD's arrest of Gumbs was constitutional, as they had probable cause of wrongdoing based upon the contraband discovered during the search of the vehicle. Accordingly, the fruits of the search of the vehicle will not be suppressed. However, the Court finds that VIPD violated Gumbs' Fifth Amendment rights when Officer Connors performed a custodial interrogation prior to reading him his *Miranda* rights. Accordingly, the Court finds that any statements Gumbs provided prior to receiving his *Miranda* rights must be suppressed.

An order consistent herewith will immediately follow.

DATED: April 18, 2023

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 04 / 18 / 23