**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

**v.**

**DAVID A. ARMSTRONG, Appellee/Defendant**

S. Ct. Criminal No. 2015-0126

Supreme Court of the Virgin Islands

May 3, 2016

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellant.*

GAYLIN VOGEL, ESQ., Kevin F. D'Amour, P.C., St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 3, 2016)

HODGE, *Chief Justice.* The People of the Virgin Islands appeal from the Superior Court's December 15, 2015 opinion and order, which granted Appellee David A. Armstrong's renewed motion to suppress evidence seized from his vehicle. For the reasons that follow, we vacate the Superior Court's ruling and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

On September 25, 2014, the People charged Armstrong with two counts of unauthorized possession of controlled substances with intent to distribute, in violation of title 19, section 604(a) of the Virgin Islands

Code. Armstrong filed a motion to suppress on March 9, 2014, alleging that bags of narcotics discovered by agents of the High Intensity Drug Area Task Force of the Virgin Islands Police Department as part of a search of his vehicle on the evening of September 24, 2014, were obtained in violation of his rights under the Fourth Amendment.[1] The People opposed the motion on April 10, 2015, and after Armstrong filed a reply on April 22, 2015, the Superior Court set the matter for a suppression hearing on May 19, 2015.

At the suppression hearing, the People presented testimony from two Task Force agents. The first agent, Detective Kenneth Small, Jr., testified that the Virgin Islands Police Department and the United States Drug Enforcement Administration were jointly conducting surveillance of a parking lot in the Red Hook area of St. Thomas, and that members of the surveillance team had described Armstrong as an individual suspected of selling drugs in the parking lot. Small — who testified that he was not himself a member of the surveillance team — stated that, as he pulled his marked police vehicle behind Armstrong's parked vehicle, he saw Armstrong throw a plastic bag into the backseat area of his vehicle, and that he proceeded to place Armstrong in handcuffs and detain Armstrong in his police car. According to Small, another agent — Officer Richard Dominguez — arrived at the scene, and subsequently searched Armstrong's vehicle with · Small's assistance. Small testified to discovering several small bags under the front seat, including some that tested positive for marijuana.

During cross-examination, Armstrong, through his counsel, introduced into evidence a probable cause fact sheet drafted by Small, as well as a surveillance video revealing that Armstrong had been detained after speaking to a white male and returning to his car. In the probable cause fact sheet, Small had written that Armstrong's vehicle had been searched based upon both the statement of a witness and Small's observations of Armstrong's activities. Small admitted that the document he drafted made it appear as if this witness had been interviewed before Armstrong's

---

[1] The Fourth Amendment of the United States Constitution applies to the Virgin Islands. *See* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995) (preceding V.I. CODE ANN. tit. 1) ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States . . . the first to ninth amendments inclusive . . . .").

detention, but in fact, the witness was interviewed after Small detained Armstrong. Small also testified on cross-examination that he never asked Armstrong for permission to search his vehicle, and that none of the plastic bags had been in plain sight. Small also admitted that, although his probable cause fact sheet stated that drugs had been found in the back seat of the vehicle, the single plastic bag found in the back seat only contained take-out food from a nearby restaurant.

Dominguez, a Virgin Islands Police Department sergeant, testified that he served as the operational supervisor for the surveillance performed that night, and that several agents, including himself, had observed, through surveillance cameras, a black male — later identified as Armstrong — moving back and forth in the parking area, approaching several people and returning to his vehicle. According to Dominguez, another agent had seen a white male approach Armstrong and conduct what was believed to be a drug transaction. Dominguez testified that he spoke with the white male after Armstrong had been detained, and that the white male had told him that Armstrong showed him a bag containing marijuana inside his vehicle and offered to sell him some, but that he ultimately chose not to buy any. Dominguez further testified that he relayed this information to the other officers present at the scene, which led to the search of Armstrong's vehicle and the discovery of the plastic bags containing narcotics. Dominguez estimated that the time between Armstrong's detention and the search of his vehicle was approximately eight minutes.

After hearing closing arguments from counsel for both parties, the Superior Court announced its decision, which it characterized as a "close call." (J.A. 107.) The Superior Court concluded that "the police acted on reasonable suspicion that a drug transaction or an attempted drug transaction had taken place based upon their observations of [Armstrong] and of the white male," and that "[t]he police acted reasonably in confronting Mr. Armstrong at that point and . . . acted reasonably in handcuffing him and placing him in the police vehicle." (J.A. 109.) The Superior Court further held that, "[h]aving detained Mr. Armstrong, the police acted with reasonable dispatch[ ] in locating and speaking with the individual . . . generally described as the white male," and "that the police . . . had probable cause to believe that there were controlled substances within the dark SUV in which Mr. Armstrong was sighted" because the white male "revealed that the defendant had not only offered to sell him drugs, but had shown him marijuana." (J.A. 110.) While the

Superior Court stated that it was "troubled that the video does not reveal the exact length of Mr. Armstrong's detention prior to the actual search of the vehicle," it ultimately concluded that this was "no basis for discrediting the testimony of Detective Sergeant Dominguez that the detention was less than eight minutes in duration." (J.A. 111-12.) Based on these findings, the Superior Court orally denied Armstrong's motion to suppress, and memorialized that decision in a written order entered on May 20, 2015.

Armstrong filed a renewed motion to suppress on July 28, 2015. The renewed motion relied heavily on a July 13, 2015 affidavit executed by Steven Joseph Polack, who had been referred to only as the white male at the May 19, 2015 suppression hearing. In his affidavit, Polack swore, under penalty of perjury, that Armstrong never offered to sell him drugs, that Armstrong never showed him drugs, that he did not see any drugs in Armstrong's vehicle, and that he never told the police that Armstrong offered to sell him drugs or that he saw drugs in Armstrong's vehicle. Because the Superior Court had characterized its initial decision as a "close call," Armstrong maintained that this new information required that the evidence be suppressed.[2]

The People filed an opposition to Armstrong's renewed motion on August 4, 2015, in which, with respect to the suppression issue, it only argued that the motion was untimely and that the Superior Court lacked the authority to revisit its prior ruling. In his August 12, 2015 reply, Armstrong maintained that a motion to suppress may be filed at any time, even on the eve of trial, if it is based on new evidence. Armstrong further argued that his counsel had experienced difficulty in contacting Polack, since Polack is located more than 1,250 miles away in Florida.

Without holding a hearing, the Superior Court issued a December 15, 2015 opinion and order that granted Armstrong's renewed motion. In its opinion, the Superior Court credited Polack's affidavit, and concluded that, "[c]ontrary to the evidence presented by the People at the

---

[2] In his renewed motion to suppress, Armstrong also argued that his cellphone had been seized in violation of his Fourth Amendment rights, since it had been taken from him on the night of September 24, 2014, and never returned. Because the People only appeal from the Superior Court's decision to grant the renewed motion to suppress as it pertains to the purported controlled substances found in Armstrong's vehicle, this issue is not before the Court. See, e.g., People v. Ward, 55 V.I. 829, 841 (V.I. 2011) (holding that a party may not obtain greater relief than requested on appeal).

suppression hearing . . . the agents had not spoken to Polack prior to the seizure of [Armstrong] and the search of his vehicle." (J.A. 160.) The Superior Court further credited Polack's averment that Armstrong "did not offer to sell Polack drugs and that [he] did not see [Armstrong] in possession of any drugs," and that he "swears that *he never indicated to the police* that [Armstrong] had offered to sell Polack drugs or that Polack had observed drugs." (J.A. 160-61 (emphasis in original).) The Superior Court concluded that, as a result of Polack's affidavit, Dominguez's credibility was "irretrievably damaged" and that "the Court must reverse its earlier ruling." (J.A. 161.) The People timely filed its notice of appeal with this Court on December 28, 2015. *See* 4 V.I.C. § 33(d)(5) ("The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered . . . .").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d). Although the People may not generally appeal an order or judgment in a criminal case, *People v. George*, 49 V.I. 504, 507 (V.I. 2008), statutory authority expressly permits the People to appeal an order suppressing evidence prior to trial. *See* 4 V.I.C. § 33(d)(2) ("An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence . . . .").

Ordinarily, this Court reviews findings of fact for clear error, but exercises plenary review over legal conclusions. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, when a case involves the interpretation of the United States Constitution, our standard of review is plenary. *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009).

### B. Authority to Consider a Renewed Motion

The People, for its first issue on appeal, renews its argument that the Superior Court should not have revisited its May 20, 2015 order denying Armstrong's motion to suppress. Specifically, the People maintain that "[t]he witness credibility issue could have been raised in the original Motion to Suppress," and that nothing precluded Armstrong from issuing

a subpoena to secure Polack's presence at the May 19, 2015 suppression hearing. According to the People, a renewed motion to suppress should be treated "similar to a motion for reconsideration," and should be granted only if there is "(1) an intervening change in the controlling law; (2) the availability of new evidence, or; (3) the need to correct clear error or prevent manifest injustice." (Appellant's Br. 12.)

██ As a threshold matter, we recognize that even though the People challenged the timeliness and propriety of Armstrong's renewed motion to suppress in its August 4, 2015 opposition, the Superior Court failed to address this argument in its December 15, 2015 opinion. As this Court has previously emphasized, "when parties properly raise an issue during the course of Superior Court proceedings, the Superior Court possesses an obligation to explain the reasons for its decision in order to enable effective appellate review by this Court." *Brown v. People*, 56 V.I. 695, 702 (V.I. 2012). This principle is particularly true when — as is the case here — a party maintains that the Superior Court lacks the authority to rule on a matter. *See, e.g.*, *Garcia v. Garcia*, 59 V.I. 758, 771 (V.I. 2013).

Nevertheless, we conclude that the People's argument that the renewed motion was not properly before the Superior Court, or should be treated similarly to a motion for reconsideration, lacks merit. Although the People rely heavily on federal authorities as well as rules promulgated by courts in other jurisdictions,[3] the filing of pre-trial motions in the Superior Court is governed by Superior Court Rule 128, which provides, in pertinent part that:

> All pre-trial motions shall be made prior to the motion deadline established by the court, unless otherwise extended by the court for good cause shown. The court shall rule on all motions prior to judgment.

[3] As this Court has repeatedly emphasized, "the Federal Rules of Criminal Procedure . . . should represent rules of last resort rather than first resort, and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other [applicable] procedure." *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014). In this case, the People not only relied on federal authorities, but, inexplicably, statutes enacted in jurisdictions such as California and the District of Columbia, all to the exclusion of Superior Court Rule 128 and this Court's precedent in *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596 (V.I. 2012), both of which authorize the Superior Court to rule on Armstrong's renewed motion to suppress. Surprisingly, even Armstrong, whose position is supported by these local authorities, failed to cite to them in his brief, instead preferring to rely on federal cases.

SUPER. CT. R. 128(a). The record provided to this Court contains no indication that the Superior Court ever established a motion deadline. But even if such a deadline had been set and violated, Rule 128 nevertheless obligated the Superior Court to rule on Armstrong's renewed suppression motion.[4]

■ Perhaps more importantly, this Court has already held that, regardless of any procedural rules, "the common law confers trial courts with the discretion to revise any interlocutory order at any time prior to entry of a final judgment." *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 609 (V.I. 2012). This inherent authority under the common law extends to criminal cases as well. *United States v. Jerry*, 487 F.2d 600, 604 (3d Cir. 1973) ("At common law, the general rule, in criminal as well as civil cases, was that judgments, decrees, and orders were within the control of the court during the term at which they were made, and they could be modified, vacated, or set aside by that court.") (citing *United States v. Benz*, 282 U.S. 304, 306-07, 51 S. Ct. 113, 75 L. Ed. 354 (1931)).

■ Although we have yet to ascertain the standard of review that applies to the Superior Court's decision to consider the merits of a renewed suppression motion, the weight of persuasive authority indicates that such a decision is reviewed for an abuse of discretion. *E.g., In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 177, 196 (2d Cir. 2008) (citing *United States v. Bayless*, 201 F.3d 116, 131 (2d Cir. 2000)); *United States v. Muhammad*, 340 Fed. Appx. 548, 550 (11th Cir. 2009) (citing *United States v. Montos*, 421 F.2d 215, 220 (5th Cir. 1970)); *State v. Wade*, 198 N.C. App. 257, 679 S.E.2d 484, 488-89 (2009) (citing *State v. Marshall*, 94 N.C. App. 20, 380 S.E.2d 360, 367 (1989)). As in *Island Tile & Marble*, in this case we need not "determine the limits of the Superior Court's authority to alter a prior interlocutory order," since even the most stringent jurisdictions have determined "that the availability of new evidence" or "the need to correct a clear error or prevent manifest

---

[4] The People, in both its brief and at oral argument, contends that the Superior Court should not have entertained the renewed motion because Armstrong could have called Polack as a witness at the May 19, 2015 suppression hearing. However, as we explain in greater detail below, it is the People who possessed the burden of proving that the warrantless search of Armstrong's vehicle was reasonable under the Fourth Amendment, even if it was Armstrong who filed the motion to suppress. *See, e.g., United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). Because the People possessed the burden of proof, Armstrong was under no obligation to present any evidence at all at the May 19, 2015 hearing. *See United States v. Schmidgall*, 25 F.3d 1523, 1530 (11th Cir. 1994).

injustice" warrants exercising this authority, *Island Tile & Marble*, 57 V.I. at 616. It is clear from the language of the December 15, 2015 opinion that the Superior Court believed that the existence of the Polack affidavit rendered its prior decision unjust. Accordingly, Armstrong's renewed motion to suppress was properly before the Superior Court.

## C. Failure to Hold An Evidentiary Hearing

The People also argue that the Superior Court erred when it granted the renewed motion without holding a new suppression hearing. Specifically, the People maintain that the Superior Court — by crediting all of the statements in Polack's affidavit and using them as a basis to reverse its earlier ruling — deprived the People of the opportunity to cross-examine Polack and to potentially show that his affidavit had been coerced or is otherwise not credible. Armstrong, in contrast, contends that the People waived any right to a new suppression hearing because the People objected to his renewed motion solely on procedural grounds rather than on the merits.

██ ██ We conclude that the Superior Court erred when it decided the renewed motion to suppress — which necessitated assessing the credibility of the Polack affidavit — without holding a hearing. As this Court recently held, where the Superior Court must resolve factual issues in ruling on a motion, "the Superior Court [is required] to hold an evidentiary hearing."[5] *3RC & Co. v. Boynes Trucking Sys., Inc.*, 63 V.I. 544, 558 (V.I. 2015) (citing *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 465 (V.I. 2014)). "If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another" — or, in this case, one piece of paper against in-court testimony — and in doing so commits error by failing to "conduct an evidentiary hearing to create a record from which to resolve the disputed issues of fact."[6] *Id.* (alternation omitted).

---

[5] Armstrong's counsel, when questioned about our *3RC & Co.* precedent at oral argument, maintained that the Superior Court had already held a hearing on May 19, 2015, with respect to Armstrong's initial motion to suppress. However, Armstrong's renewed motion is separate and distinct from his original motion, and as we held in *3RC & Co.*, an evidentiary hearing will always be required when the Superior Court is required to weigh the evidence, assess the credibility of witnesses, and resolve disputed issues of material fact. 63 V.I. at 558.

[6] As with the parties' failure to bring Superior Court Rule 128 and the *Island Tile & Marble* precedent to this Court's attention, it is of concern that neither party addressed this Court's decision in *3RC & Co.* in their briefs, even though it is a controlling precedent of this Court

The need for an evidentiary hearing on the renewed motion is particularly pronounced in this case. Although ordinarily it is the defendant who bears the burden of proving that evidence should be suppressed, this is not the case if a defendant has moved to suppress evidence on grounds that it was obtained without a warrant in violation of the Fourth Amendment. In such cases, although it is the defendant who has made the motion, it is the prosecution that bears the burden of proving that the warrantless search was reasonable. *See United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)); *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983); *United States v. Impson*, 482 F.2d 197, 199 (5th Cir. 1973) (citing *Whiteley v. Wyoming Penitentiary*, 401 U.S. 560, 564-69, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971)). Thus, by ruling on the renewed motion without holding a hearing, the Superior Court prevented the People from even attempting to meet its burden of proof. *See Mendez v. Gov't of the V.I.*, 56 V.I. 194, 204-05 (V.I. 2012) (holding that the party that bears the burden of proof on an issue must have an opportunity to respond to any adverse evidence filed by the other party).

This Court has recognized, of course, that the Superior Court need not conduct an evidentiary hearing "if the parties' filings reveal absolutely no factual disputes." *3RC & Co.*, 63 V.I. at 558 (quoting *Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 314 (V.I. 2014)). Armstrong maintains that "the Superior Court had the authority and ability to pass judgment without a second suppression hearing" because "the People challenged the renewed motion to suppress on procedural grounds" and "never challenged the validity of the Polack statement in their response to the renewed motion to suppress." (Appellee's Br. 16.) To support this claim, Armstrong cites to a single case applying New York law for the proposition that a suppression motion may be summarily granted "when

<hr>

that has disposed of this very issue six months before the parties' briefs were due in this case. Moreover, the People not only failed to cite to the *3RC & Co.* case — even though it favors its position — but cited to a federal case, *United States v. Raddatz*, 592 F.2d 976 (7th Cir. 1979), for a similar proposition without disclosing that it had been reversed by the Supreme Court of the United States, *see United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). We remind counsel for both parties of their ethical obligations with respect to citing authority in their briefs, including disclosing whether a cited case has been overturned. *See* V.I.S.CT.R. 15(b).

the People concede the facts." *People v. Weaver*, 49 N.Y.2d 1012, 406 N.E.2d 1335, 1336, 429 N.Y.S.2d 399 (1980).

██ However, in this case the People never conceded that Polack's affidavit was credible; rather, the People challenged the renewed motion on procedural grounds, without taking any position on the truthfulness of the affidavit. This Court has consistently held that silence — without more — is not tantamount to consent or agreement. *See, e.g., Najawicz v. People*, 58 V.I. 315, 325 n.6 (V.I. 2013). In fact, even New York courts have held that the prosecution's failure to file a substantive response to a motion to suppress cannot form the basis for summarily granting the motion without a hearing, since "[t]he failure to submit opposing papers is not tantamount to an affirmative concession that the facts alleged by [the] defendant are true." *People v. Scott*, 210 A.D.2d 920, 621 N.Y.S.2d 260, 261 (1994). For the same reason, the People's failure to affirmatively request a suppression hearing is not tantamount to waiver of the hearing if the hearing is otherwise required by law.[7] *Cf. Francis v. People*, 57 V.I. 201, 216 n.10 (V.I. 2012) (citing *Murrell v. People*, 54 V.I. 338, 361-62 (V.I. 2010)) (explaining difference between waiver and forfeiture); *accord Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013) ("This Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law."); *Thomas v. State*, 1989 OK CR 32, 777 P.2d 399, 400 (1989) (holding that a party may not waive a mandatory hearing simply by failing to make a request for one). Therefore, we vacate the Superior Court's December 15, 2015 opinion

---

[7] At oral argument, counsel for the People maintained that it was precluded from asking for an evidentiary hearing because a Superior Court rule purportedly only allows the movant to request a hearing. However, Superior Court Rule 128 — which governs motions in criminal cases — contains no such limitation. Although Superior Court Rule 36 — which applies to motions in the Civil Division — does provide that "[o]ral argument may be requested by the movant on any motion," SUPER. CT. R. 36(a), it is clear that "oral argument is not an evidentiary hearing." *Davis v. Schmidt*, 210 S.W.3d 494, 518 (Mo. Ct. App. 2007). Rather "the purpose of oral argument is to permit the Court to conduct a dialogue with counsel about the legal issues involved and not to make a factual record." *Thomas v. City of New York*, No. 97 Civ. 215(JSM), 1997 U.S. Dist. LEXIS 16020, at *2 (S.D.N.Y. Oct. 16, 1997) (unpublished). And in any event, it is well-established that a Superior Court rule cannot be interpreted to overturn a precedent from this Court, *Sweeney*, 60 V.I. at 442, which would be the case with our *3RC & Co.* precedent if this Court interpreted Superior Court Rules 128 or 36 to only require an evidentiary hearing on a disputed factual issue if affirmatively requested by the moving party.

and order, and remand the case so that the Superior Court may conduct an evidentiary hearing on Armstrong's renewed motion.[8]

## III. CONCLUSION

Because Superior Court Rule 128 obligates the Superior Court to rule on all motions prior to judgment, and because the Superior Court possesses the inherent authority to review any of its earlier interlocutory orders prior to entry of final judgment, the Superior Court was within its right to consider Armstrong's renewed motion to suppress on the merits. However, since the Superior Court is required to hold an evidentiary hearing whenever a factual dispute exists that requires it to weigh the evidence, the Superior Court erred when it summarily granted Armstrong's renewed motion. Accordingly, we vacate the Superior Court's December 15, 2015 opinion and order, and direct the Superior Court on remand to hold a suppression hearing in which the People may introduce evidence to support the legality of the search of Armstrong's vehicle, including challenging the credibility of the Polack affidavit.

---

[8] In its appellate brief, the People maintain that the Superior Court correctly denied Armstrong's initial motion to suppress, and devote substantial briefing to support that claim. However, as explained above, we conclude both that Armstrong's renewed motion to suppress was properly before the Superior Court, and that the Superior Court committed error when it granted that motion without first holding an evidentiary hearing. And although Armstrong contends in his brief that the Superior Court erred when it denied his initial motion, he may not argue against the Superior Court's original decision as an alternate ground in support of affirmance. Although an appellee may ordinarily raise any alternate argument in support of affirmance, Armstrong, by requesting reversal of the May 20, 2015 order, seeks affirmative relief from this Court. Significantly, Armstrong could not appeal the May 20, 2015 order to this Court prior to final judgment, and the May 20, 2015 order is not inextricably intertwined with the December 15, 2015 opinion and order that the People have appealed to this Court, since this Court may determine the correctness of the December 15, 2015 opinion without expressing any opinion on the May 20, 2015 order. *See Ward*, 55 V.I. at 840-41. Consequently, we decline the parties' invitation to review the May 20, 2015 order as part of this appeal.