IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 26, 2024 09:58 AM
SX-2021-CR-00199
**TAMARA CHARLES**
**CLERK OF THE COURT**



## SUPERIOR COURT OF THE VIRGIN ISLANDS

### DIVISION OF ST. CROIX

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,**<br><br>PLAINTIFF,<br><br>V.<br><br>**FADE ASAD,**<br><br>DEFENDANT. | **SX-2021-CR-198** |
| **PEOPLE OF THE VIRGIN ISLANDS,**<br><br>PLAINTIFF,<br><br>V.<br><br>**DARNLEY PETERSON,**[1]<br><br>DEFENDANT. | **SX-2021-CR-199**<br><br><br>**CITE AS: 2024 VI SUPER 20** |

**Appearances:**

**Amie M. Simpson, Esq.**
Virgin Islands Department of Justice
St. Croix, U.S. Virgin Islands
*For People of the Virgin Islands*

**Martial A. Webster, Sr., Esq.**
Law Office of Martial A. Webster, Sr.
St. Croix, U.S. Virgin Islands
*For Fade Asad*

**Ronald Russell, Esq.**
The Russell Law Firm LLP
St. Croix, U.S. Virgin Islands
*For Darnely Peterson*

### <u>MEMORANDUM OPINION AND ORDER</u>

**WILLOCKS, Administrative Judge**

¶ 1    **THIS MATTER** came before the Court for a second suppression hearing on July 26, 2023.

---

[1] There is a discrepancy between the spelling of Defendant Darnely Peterson's last name in the information and in his filings—to wit, the information spelled it as "Peterson" while his filings spelled it as "Petersen." The Court will use the spelling used in the information since that is the initiating document and the spelling of the name therein was never amended.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 2 of 16

2024 VI SUPER 𝓛𝓤

## BACKGROUND

¶ 2    On September 13, 2019, the People of the Virgin Islands (hereinafter "People") filed a joint information against Defendant Fade Asad (hereinafter "Asad") in criminal case number SX-2021-CR-198 and Defendant Darnely Peterson (hereinafter "Peterson" and together with Asad, "Defendants") in criminal case number SX-2021-CR-199, based on the events that allegedly took place on or about August 28, 2021 as set forth in the affidavit of Police Officer Dwayne E. Walters (hereinafter "Officer Walters"), dated September 13, 2021 (hereinafter "Walters Affidavit"). The information charged both Asad and Peterson with the following counts:

> Count One. FADE ASAD, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

> Count Two. FADE ASAD, when not authorized by law, possessed firearm ammunition, to wit: multiple .40 caliber live rounds, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)

> Count Three. DARNLEY PETERSON, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in violation of Title 14 V.I.C. § 2253(a). (UNAUTHORIZED POSSESSION OF A FIREARM)

> Count Four. DARNLEY PETERSON, when not authorized by law, did have, possess, bear, transport, or carry either actually or constructively, open or concealed, a firearm, to wit: a black Glock 23 .40 caliber bearing serial number #BGHA928, in a 4-door Grey Nissan Altima with no license plate number, in violation of Title 14 V.I.C. § 2253(e). (UNAUTHORIZED POSSESSION OF A FIREARM IN A VEHICLE)

> Count Five. DARNLEY PETERSON, when not authorized by law, possessed firearm ammunition, to wit: multiple .40 caliber live rounds, in violation of Title 14 V.I.C. § 2256(a). (POSSESSION OF AMMUNITION)

> (Information.)

¶ 3    A copy of Officer Walters' Affidavit was filed with the information. In his affidavit, Officer Walters stated in relevant part: (i) on August 28, 2021, Police Officer Jon Modeste

(hereinafter "Officer Modeste") and Police Officer Robin Richards (hereinafter "Officer Richards") were on mobile patrol in a marked police vehicle; (ii) at around 10:28 p.m., Officer Modeste and Officer Richards observed a four-door grey Nissan Altima without a rear license plate leaving a parking space near the Napoleon's Pizza in Peter's Rest on St. Croix; (iii) at that time, Officer Walters was also on mobile patrol near the Napoleon's Pizza in Peter's Rest on St. Croix; (iv) Officer Modeste and Officer Richards then conducted a traffic stop of said vehicle in the parking lot of Napoleon's Pizza; (v) during the traffic stop, Officer Walters was positioned by the driver side of the vehicle while Officer Modeste and Officer Richards were positioned by the passenger side of the vehicle; (vi) Officer Walters observed the front passenger, later identified as Peterson, begin to exit the vehicle; (vii) "based on information and belief, while Mr. Peters[o]n was trying to get out of the vehicle, [Officer Richards] observed what appeared to be the handle of a gun with an extended magazine protruding from an open brown in color backpack-style bag that was located on the floorboard of the vehicle;" (viii) about that same time, Officer Walters asked the driver, later identified as Asad, to produce his driver's license, vehicle registration, and proof of insurance; (ix) Asad was only able to able provide Officer Walters with the insurance card for his vehicle; (x) while Officer Walters was still standing by the driver side, Officer Modeste came around the vehicle and advised Officer Walters that Officer Richards observed what appeared to be a firearm in a brown bag on the floorboard of the front passenger side of the vehicle; (xi) Officer Walters then ordered Asad to exit the vehicle; (xii) Officer Walters and Officer Richards then commanded Asad and Peterson to lay on the ground; (xiii) Asad and Peterson were then advised of the officers' findings and Officer Walters asked them "who does the firearm belong to;" (xiv) both Asad and Peterson replied that "it doesn't belong to us;" (xv) Asad and Peterson were then asked if either of them had a license to possess the firearm that was in the car and they both replied

"no;" (xvi) Asad and Peterson were then placed in handcuffs and patted down before being placed in the patrol unit; (xvii) Forensic Technician Makima Wilkinson (hereinafter "Officer Wilkinson") and Forensic Technician Elyce Fleming came to the scene to process the vehicle and collect the firearm; (xviii) Officer Wilkinson recovered the following from the vehicle: a firearm that was a black Glock 23 .40 caliber, serial number BGHA928, which contained thirteen live .40 caliber rounds in the black magazine and one .40 caliber round in the chamber and a second black magazine that contained nine live .40 caliber rounds; and (xix) the Custodian of Records for the Firearm Bureau confirmed that neither Asad nor Peterson have a license to possess firearm in the U.S. Virgin Islands. (Walters Aff.)

¶ 4    On July 21, 2022, Asad filed a motion to suppress "any evidence seized and statements made by [him]" and a memorandum of law in support thereof in criminal case number SX-2021-CR-198.[2] On August 11, 2022, the People filed an opposition thereto.[3] After the People filed their opposition, on September 18, 2022, Peterson filed a joinder of Asad's motion to suppress and his own motion to suppress "any evidence seized and statements made by [him]" in criminal case number SX-2021-CR-199.

¶ 5    On September 23, 2022, this matter came before the Court for a suppression hearing. At the end of the suppression hearing, the Court ordered the parties to file supplemental briefings on certain issues that were raised for the first time at the hearing. The People, Asad, and Peterson filed their supplemental briefs on October 3, 2022, October 7, 2022, and October 11, 2022, respectively.

---

[2] Asad attached the following to his motion: Exhibit 1-The Walters Affidavit.

[3] The People attached the following to their opposition: Exhibit A-Photo of dark gray vehicle without a registration sticker affixed to the lower left corner of the windshield and without a front license plate affixed; and Exhibit B-Photo of the interior of the front passenger side of a vehicle and the contents contained therein.

¶ 6     On July 10, 2023, the Court entered a memorandum opinion and order (hereinafter "July 10, 2023 Order") whereby the Court held that "by not having the registration sticker and the front license plate affixed to his vehicle in the parking lot of Napoleon's Pizza, Asad committed traffic violations and the traffic stop to investigate the violations was lawful"[4] but noted that a second suppression hearing was necessary to address the issues Defendants raised for the first time at the hearing and in their supplemental briefs—to wit, issues as to the plain view doctrine and the lack of in-court identification at the September 23, 2022 suppression hearing.

¶ 7     On July 26, 2023, this matter came before the Court for a second suppression hearing limited to the following two issues: (i) whether it was immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure and (ii) what implications, if any, result from the lack of in-court identifications at the first suppression hearing. The Court heard arguments from the parties and the testimony of the People's witness Officer Robert Richards (hereinafter "Officer Richards"); neither defendant presented any witnesses. Officer Richards testified, *inter alia*, that he had specialized training in firearms, that he saw the black object in a brown bag in plain view on the floorboard of the front passenger side of the vehicle, that he immediately recognized the black object as the butt of a firearm, and that Defendants—before they were advised of their Miranda rights—were then asked if they had a license to carry the firearm, which they answered in the negative. Given that there was no testimony that the officers had any reason to believe that Defendants lacked a license to carry the firearm until Defendants told the officers that they did not have one, *United States v. Ubiles*, 224 224 F.3d 213 (3d Cir. 2000) and

---

[4] The Court referenced: *Rodriguez v. U.S.*, 575 U.S. 348, 354 (2015) (The United States Supreme Court held that "[a] seizure for a traffic violation justifies a police investigation of that violation" and explained that "'[a] relatively brief encounter,' a routine traffic stop is 'more analogous to a so-called '*Terry* stop' ... than to a formal arrest.'") (citations omitted).

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 6 of 16

2024 VI SUPER 20

its progeny were triggered. At the end of the hearing, the Court gave the parties the opportunity to file supplemental briefings as to the implications of *Ubiles* and its progeny here, if any. Peterson, the People, and Asad filed their supplemental briefs on March 20, 2024, April 2, 2024, and April 5, 2024, respectively.

## STANDARD OF REVIEW

¶ 8    "The Fourth Amendment protects persons from 'unreasonable searches and seizures.'"[5] *People of the V.I. v. Looby*, 68 V.I. 683, 694 (V.I. 2016). To conduct a valid search under the Fourth Amendment, generally a judge or magistrate "must issue a warrant upon a finding of probable cause that describes, with particularity, both the place to be searched and the persons or things to be seized." *Id.* Searches conducted "without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* (internal quotations omitted). Furthermore, as to seizures, the Fourth Amendment "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Blyden v. People of the V.I.*, 53 V.I. 637, 647 (V.I. 2010) (citing *Brown v. Texas*, 443 U.S. 47, 50 (1979) (internal quotations omitted)).

¶ 9    "Although the burden of proving that a search or seizure was unlawful normally rests with the defendant, when the police conduct a search or seizure without a warrant, the burden shifts to the government to prove exigent circumstances or another exception to the warrant requirement." *Nicholas v. People of the V.I.*, 56 V.I. 718, 738 (V.I. 2012) (citations omitted); *see*

---

[5] "The Fourth Amendment is applicable in the Virgin Islands pursuant to § 3 of the Revised Organic Act of 1954." *People of the V.I. v. Glasford*, 2022 V.I. LEXIS 40, at *10 (V.I. Super. Ct. Apr. 19, 2022) (citing *People of the V.I. v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (citing Revised Organic Act of 1954, § 3; 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1)).

*Armstrong*, 64 V.I. at 537 ("Although ordinarily it is the defendant who bears the burden of proving that evidence should be suppressed, this is not the case if a defendant has moved to suppress evidence on grounds that it was obtained without a warrant in violation of the Fourth Amendment. In such cases, although it is the defendant who has made the motion, it is the prosecution that bears the burden of proving that the warrantless search was reasonable."). Any evidence derived from a Fourth Amendment violation must be excluded from trial as "fruit of the poisonous tree." *Blyden*, 53 V.I. at 650 (citing *Wong v. U.S.*, 371 U.S. 471, 488 (1963)).

## DISCUSSION

### 1. Lack of In-Court Identification at the September 23, 2022 Suppression Hearing

¶ 10    The issue posed before the Court is whether there must be an in-court identification of each defendant at the suppression hearing—as either the driver or the passenger of the vehicle stopped. Defendants argued that the lack of in-court identification at the first suppression hearing was fatal to the prosecution and thus, the Court should dismiss the charges against Defendants. The People disagreed and argued that an in-court identification was not necessary at the suppression hearing.

¶ 11    The Court's research disclosed no Virgin Islands precedent on point. However, a review of the United States Supreme Court precedent makes it very clear that the Fourth Amendment rights is a personal right which may not be vicariously asserted. *See Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 630 (2016) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)) (Fourth Amendment rights are purely personal); *see also, Rakas v. Illinois*, 439 U.S. 128, 140 n.8 (1978); V.I. R. CRIM. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). In other words, a defendant must show that he was in fact the victim of a particular Fourth Amendment violation

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198. SX-2021-CR-199
**Memorandum Opinion and Order**
Page 8 of 16

2024 VI SUPER 20

to challenge the legality of the search or seizure. *See Alderman v. United States*, 394 U.S. at 173 (quoting *Jones* v. *United States*, 362 U.S. 257, 261 (1960)) ("In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. . . ."). With this in mind, the Court finds that when Asad and Peterson filed their respective motions to suppress, Asad and Peterson each alleged that he himself was a "victim of an invasion of privacy." By alleging that he himself was the victim of an illegal search and seizure as a result of an illegal stop, Asad effectively claimed that he was the driver as stated in his motion and that he is entitled to claim that the search and seizure by the officers occurred in violation of his Fourth Amendment rights; similarly, by alleging that he himself was the victim of an illegal search and seizure as a result of an illegal stop, Peterson effectively claimed that he was the passenger as stated in his motion and that he is entitled to claim that the search and seizure by the officers occurred in violation of his Fourth Amendment rights.[6] *See Jones* 362 U.S. at 261; *see also, Rakas*, 439 U.S. at 132. Had the evidence revealed that Asad was not the driver or that Peterson was not the front passenger, then they would not have standing to pursue the suppression of evidence and statements and to seek to vindicate their Fourth Amendment rights. However, no such evidence was introduced at the suppression hearing and the People did not contest Defendants' allegations

---

[6] In their respective motions, both Defendants referenced the Walters Affidavit, which identified Asad as the driver and Peterson as the front passenger. While it is true that Defendants stated therein that they "contest[] the facts of the [Walters] Affidavit," it appears that they only contested to Officer Walters' statement that the officers "observed a four-door grey in color Nissan Altima bearing no rear license plate leaving a parking space near the Napoleon's Pizza in Peter's Rest"—to wit, Defendants argued that "[t]he officers were not able to see from the front of the vehicle that the vehicle did not have a license plate in the back of the vehicle, which the officers articulate for their reason for stopping defendant's vehicle." (Asad Motion 5; Peterson Motion 4.) There was no mention of any dispute over Asad's identity as the driver of the vehicle and Peterson's identity as the front passenger of the vehicle.

that Asad was the driver and Peterson was the front passenger, and that they were the individuals searched and seized by the officers. Thus, the Court finds that Defendants' allegations in their suppression motions sufficed to establish Asad as the driver and Peterson as the passenger seeking constitutional protection, and the People bears no burden at the suppression hearing to prove that Defendants were the victims of the alleged illegal police conduct. As such, the Court concludes that the People do not have an obligation at the hearing on Defendants' motions to suppress, as they do at a trial on the merits, to identify Defendants as the individuals who are alleged to have committed the crime. Additionally, where Defendants have challenged the legality of a search and seizure as unsupported by probable cause via motions to suppress, the Court finds that that such motions are not converted to a probable cause hearing where the People must prove to a probable cause standard that the defendant committed a crime. V.I. R. CRIM. P. 5(b)(1) ("The court shall consider any affidavit or information then filed, and shall examine the arresting officer, and/or any other witnesses to the crime under oath at the Initial Appearance Hearing. The defendant may cross-examine witnesses against him. If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the judge or magistrate shall forthwith hold the defendant to answer the complaint. The finding of probable cause may be based upon hearsay evidence in whole or in part."); V.I. R. CRIM. P. 5(b)(2) ("If the judge or magistrate judge determines at the Initial Appearance hearing that there is no probable cause to believe that any offense has been committed or that the accused committed it, the court shall dismiss the proceeding, discharge the accused, and exonerate any bail posted. The discharge of the accused shall not preclude the Government from instituting a subsequent prosecution for the same offense based on additional facts or evidence."). To put it another way, a motion to suppress places upon the People the burden of proving that the officers did not violate Defendants'

constitutional rights; in order for Defendants to proceed with their motions to suppress, each defendant must bring himself before the Court as the person whose rights were allegedly violated, and once the defendant has done this by filing a motion to suppress, identity is not at issue at the suppression hearing and there is no need for the in-court identification of Defendants thereat.

## 2. Plain View Doctrine

¶ 12   The plain view doctrine is a well-established exception to the warrant requirement. *Gumbs v. People of the V.I.*, 64 V.I. 491, 508 (V.I. 2016). In *Gumbs*, the Virgin Islands Supreme Court noted that under the plain view doctrine, an officer may "make a warrantless seizure of any item that he or she has viewed from a place or position in which he or she was lawfully entitled to be, provided it is immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure." 64 V.I. 491, 508-09 (V.I. 2016) (citing *Thomas v. People*, 63 V.I. 595, 606 n.4 (citing *Texas v. Brown*, 460 U.S. 730, 741 (1983))). The United States Supreme Court explained that "[i]f, while conducting a legitimate *Terry* search … the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Gumbs*, 64 V.I. at 509 (quoting *Minnesota v. Dickerson*, 508 U.S. 366 (1993) (quoting *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) and citing *Sibron v. New York*, 392 U.S. 40, 69-70, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968) (White, J. concurring))).

¶ 13   At the second suppression hearing,[7] Officer Richards testified that he is knowledgeable about firearms and that he was in close proximity to the vehicle when he spotted the black object

---

[7] In the July 10, 2023 Order, the Court explained:

> ¶ 25   Through the affidavit and testimony of Officer Walters, the People established: (i) during the traffic stop, Officer Walters was standing by the driver side of the vehicle, (ii) during the traffic stop, other officers, including Officer Richards, were standing by the passenger side of the vehicle, and (iii) Officer Richards

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 11 of 16

2024 VI SUPER 40

in plain view which he immediately recognized the object as the butt of a firearm. In light of Officer Richards' testimony and given that the Court already found the initial stop to be lawful, the Court concludes that the plain view exception to the warrant requirement applies to the firearm seized from the vehicle.

### 3. *Ubiles and its Progeny*

¶ 14     As noted above, *Ubiles* and its progeny were triggered at the second suppression hearing when there was no testimony that the officers had any reason to believe that Defendants lacked a license to carry the firearm until Defendants told the officers that they did not have one. In *Ubiles*, the stop and frisk originated after a member of the public informed a law enforcement officer that a man—Ubiles—standing on the sidewalk at a crowded event possessed a gun. The pat-down search of Ubiles revealed a machete and an unregistered firearm and the United States subsequently filed an indictment against Ubiles for possession of a firearm with an obliterated serial number in violation of federal law, 18 U.S.C. §§ 922(k), 924(a)(1)(B), and possession of an unregistered firearm in violation of Virgin Islands law, Title 14 V.I.C. § 2253(a). *Ubiles*, 224 F.3d at 215. In reviewing the District Court's decision to deny Ubiles's motion to suppress the firearm,

---

observed what appeared to be the handle of a gun with an extended magazine protruding from an open brown in color backpack-style bag that was located on the floorboard of the vehicle.

¶ 26     In this instance, Asad and Peterson's counsel did not raise any arguments as to the circumstances surrounding Peterson's act of attempting to exit the vehicle. Thus, the Court construes that the defense counsel do not dispute the lawfulness of the circumstances surrounding Peterson's act of attempting to exit of the vehicle. Since the Court finds that the traffic stop was lawful and the defense counsel did not dispute the lawfulness of the circumstances surrounding Peterson's act of attempting to exist the vehicle, the Court finds that the officers were lawfully entitled to be standing by the passenger side of the vehicle. *Gumbs*, 64 V.I. at 508-9. However, as noted above, the officer that initially observed in plain view the item that appeared to be a firearm did not testify at the suppression hearing since this issue was raised for the first time at the suppression hearing. Thus, the Court cannot determine whether "it [wa]s immediately apparent that the item observed is evidence of a crime, contraband, or otherwise subject to seizure." *Id.* At this juncture, the Court will schedule a second suppression hearing to address this issue.[7] Given that the plain view doctrine is an exception to the warrant requirement, the Court cannot address the defendants' argument as to lawfulness of this warrantless search until after the Court determines whether the plain view doctrine is applicable here.

(July 10, 2023 Order.)

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 12 of 16

2024 VI SUPER 7W

the Third Circuit held that "[i]t is not necessarily a crime to possess a firearm in the Virgin Islands; nor does a mere allegation that a suspect possesses a firearm, as dangerous as firearms may be, justify an officer in stopping a suspect absent the reasonable suspicion required by *Terry*," and ultimately concluded that the firearm seized was the fruit of an unlawful seizure because reasonable suspicion was not present in the absence of any evidence that the Ubiles illegally possessed the gun or was otherwise engaging in criminal activity. *Id.* at 217-18 (citations omitted). However, "in the years after *Ubiles* was decided, the Third Circuit found constitutional a 'stop and frisk' initiated based solely on a tip that an individual possessed a firearm." *People of the V.I. v. Murrell*, 56 V.I. 796, 806 (V.I. 2012) (citing *United States v. Gatlin*, 613 F.3d 374, 378-79 (3d Cir. 2010); *United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000)).

¶ 15    In their respective supplemental brief, Defendants essentially argued that the Court should grant their motions to suppress because—similar to the circumstances in *Ubiles*—reasonable suspicion was not present in the absence of any evidence that they illegally possessed the firearm or was otherwise engaging in criminal activity. (Asad Supp. Brief; Peterson Supp. Brief.) In their supplemental brief, the People argued that the Court should deny Defendants' motions to suppress because they "completely failed to assert their Fifth Amendment right and failed to properly assert their Fourth Amendment rights under *Ubiles*" and should be "limited to seeking suppression on [the grounds of plain view and the lack of in-court identification]. (People's Supp. Brief.)

¶ 16    The Court notes at the outset that *Ubiles* is merely persuasive authority—not binding authority—since it was before the Third Circuit on appeal from the District Court of the Virgin Islands sitting as a federal trial court. *See Ernest v. Morris*, 64 V.I. 627, 638 (V.I. 2016) ("In other words, Third Circuit decisions are merely persuasive authority if the case was before that court on appeal from the District of Delaware, the District of New Jersey, the Eastern, Western, or Middle

Districts of Pennsylvania, or the District Court of the Virgin Islands sitting as a federal trial court."); *see also, Najawicz v. People*, 58 V.I 315, 327-27 (V.I. 2013) (rejecting the parties' assertion that a decision in "a case that originated in the Western District of Pennsylvania" is binding on the Superior Court, and noting: "Although we previously instructed that decisions rendered by the Third Circuit are binding upon the Superior Court even if they would only represent persuasive authority when this Court considers an issue, we have made this statement in the context of decisions the Third Circuit rendered while serving as the *de facto* court of last resort in the Virgin Islands.") (alterations, citations, and internal quotation marks omitted). Thus, while the Court acknowledges the Third Circuit's holding in *Ubiles*, the Court finds it unpersuasive, especially in light of *Murrell*. In *Murrell*, the Virgin Islands Supreme Court questioned the Third Circuit's conclusion in *Ubiles* and *Lewis* that local Virgin Islands law does not contain a presumption that an individual lacks a permit to carry a firearm,[8] pointed out that "section 488 [of

---

[8] In *Lewis*, the Third Circuit distinguished *Ubiles* from *Gatlin*, a Delaware case, by noting that the decisions were based on Virgin Islands and Delaware local law, respectively.

> For cases arising out of the Virgin Islands ... the treatment afforded firearms under territorial law continues to be of paramount importance in our analysis. In *United States v. Gatlin*, 613 F.3d 374 (3d Cir. 2010), an officer received a tip from a reliable source that a man was walking on a street in Wilmington, Delaware with a firearm in his jacket. *Id.* at 376-77. Based on the man's description, officers responded to the area where the informant indicated that the man could be found. *Id.* at 377. Officers located the man, handcuffed him, and patted him down, finding an unlicensed handgun in violation of Delaware law. *Id.*

> We noted that the facts in *Gatlin* resembled those in *Ubiles* — i.e., the sole evidence to support the *Terry* stop was a tip about a firearm — but nonetheless concluded that reasonable suspicion existed to frisk the defendant for weapons. *Id.* at 378-79. Critical to our analysis was the presumption under Delaware law, unlike in the Virgin Islands, that an individual has no license to carry a concealed firearm. *Id.* The reliable tip coupled with the presumption of illegality provided officers with reasonable suspicion to conduct an investigatory stop within the confines of *Terry*. *Id.* at 379.

> ... It is lawful for certain individuals in the Virgin Islands to carry a firearm provided that a license is obtained. *See* V.I. CODE ANN. tit. 23, § 454. *Ubiles* recognized that the possession of a firearm in the Virgin Islands, in and of itself, does not provide officers with reasonable suspicion to conduct a *Terry* stop. 224 F.3d at 217 ("[A] mere allegation that a suspect possesses a firearm, as dangerous as firearms may be, [does not] justify an officer in stopping a suspect absent the reasonable suspicion."). Indeed, Virgin Islands law contains no presumption that an individual lacks a permit to carry a firearm. *Gatlin*, 613 F.3d at 378-79. As we observed in *Gatlin*, the Government bears the burden of proof in the Virgin Islands that the defendant had no license for a recovered firearm. *Id.* at 379 (citing *United States v. McKie*, 112 F.3d 626, 630, 36 V.I. 367 (3d Cir. 1997)).

Title 23 of the Virgin Islands Code] may provide authority for the proposition that the Legislature

intended for law enforcement officers to presume illegality when informed that an individual who

is not obviously authorized to carry a firearm is carrying a firearm in public, notwithstanding the

fact that the government, in a criminal prosecution, would bear the burden of proving that the

firearm is unlicensed," *Murrell*, 56 V.I. at 812, and noted that "local Virgin Islands firearm

licensure laws may not necessarily be significantly different from Delaware law, which the Third

Circuit concluded provides a presumption of illegality,"[9] *Id.*, 56 V.I. at 812 n.13. Nevertheless,

"[n]otwithstanding the fact that legitimate, non-frivolous arguments exist to depart

from *Ubiles* and *Lewis*, and despite the existence of section 488, [the Virgin Islands Supreme

Court] decline[d] to resolve this issue as part of this appeal because the People have failed to

argue, either before the Superior Court or in their appellate brief, that *Ubiles* or *Lewis* were

wrongly decided and that this Court should hold that a presumption exists under section 488 that

an individual lacks a permit to carry a firearm in the Virgin Islands." *Id.*, 56 V.I. at 812-13. In this

instance, consistent with the Virgin Islands Supreme Court's reasoning in *Murrell*, the Court

concludes that there is a presumption under Virgin Islands law that an individual lacks a license to

carry a firearm under section 488 of Title 23 of the Virgin Islands Code (hereinafter "Section

---

*Lewis*, 672 F.3d at 239-40.

[9] In *Murrell*, the Virgin Islands Supreme Court explained:

> At first glance, it may seem that Delaware imposes greater restrictions on the carrying of concealed weapons than the Virgin Islands, in that the pertinent statute imposes numerous requirements not found in the Virgin Islands Code, such as requiring applicants to submit character affidavits and to file proof of completion of firearms training courses. *See* DEL. CODE ANN. tit. 11, § 1441. However, while chapter 5 of title 23 imposes several limitations on who may attain a license to possess a firearm, section 485 vests the Police Commissioner with the authority to impose additional rules and regulations that, "upon approval by the Governor, shall have the force and effect of law." We note that several of the additional requirements found in the Delaware statute have also been adopted in the Virgin Islands, but are found in these regulations rather than in the Virgin Islands Code itself. *See, e.g.*, 23 V.I.R.R. § 485-6(a)(4)(D) (completion of recognized course in firearm safety).

*People of the V.I. v. Murrell*, 56 V.I. 796, 812 n.13 (2012)

488"), which unambiguously places the burden upon the individual to "produce evidence that he

is entitled to so wear, carry, or transport the firearm pursuant to section 454" in the event that the

officer discovers during the stop and search that the individual possesses a firearm.[10] Title 23

V.I.C. § 488(b). In fact, the language under Section 488 authorizes the officer to inquire of the

individual whether he/she has a license to carry the firearm, and that "[i]f the person is unable to

produce such evidence, the officer may then seize the firearm and arrest the person." *Id.* Here,

neither Asad nor Peterson was able to produce evidence that either possessed a license to carry the

---

[10] The statutes reads, in its entirety, as follows:

> (a) Any law enforcement officer who, in the light of his observations, information and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a firearm in violation of section 454 of this title, (ii) by virtue of his possession of a firearm, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a firearm, such officer may:
>
> > (1) approach the person and identify himself as a law enforcement officer;
> >
> > (2) request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and
> >
> > (3) ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title; and
> >
> > (4) if the person does not give an explanation which dispels, the reasonable belief which he had, he may conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a firearm. The police officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner and sex of the person approached.
>
> (b) In the event that the officer discovers the person to be wearing, carrying, or transporting a firearm, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the firearm pursuant to section 454 of this title. If the person is unable to produce such evidence, the officer may then seize the firearm and arrest the person.
>
> (c) Nothing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law.
>
> Any police officer sued in a civil action for conducting a search or seizure pursuant to this section which is alleged to be unreasonable and unlawful shall, upon his request, be defended in said action and any appeals therefrom, by the Attorney General.
>
> Every police officer who conducts a search or seizure pursuant to this section shall, within twenty-four hours after such search or seizure, file a written report with the U.S. Virgin Islands Police Department (V.I.P.D.) describing the circumstances surrounding the search or seizure and the reasons therefor on a form prescribed by the Police Commissioner. Such report shall include the name of the person searched.
>
> Title 23 V.I.C. § 488.

*People of the V.I. v. Asad, People of the V.I. v. Peterson*
SX-2021-CR-198, SX-2021-CR-199
**Memorandum Opinion and Order**
Page 16 of 16

2024 VI SUPER 70

firearm, and when the officers inquired, Asad and Peterson confirmed that they did not have such a license. As such, the Court finds that there was no Miranda violation and that there was no illegality of the seizure of the firearm.

## CONCLUSION

¶ 17 Based on the foregoing, the Court will deny Defendants' motions to suppress. Accordingly, it is hereby:

ORDERED that Asad's July 21, 2022 motion to suppress is **DENIED**, filed in criminal case number SX-2021-CR-198. **And** it is further:

ORDERED that Peterson's September 18, 2022 motion to suppress, filed in criminal case number SX-2021-CR-199, is **DENIED**.

**DONE and so ORDERED this** _26th_ **day of April, 2024.**

**ATTEST:**
Tamara Charles
Clerk of the Court

HAROLD W.L. WILLOCKS
**Administrative Judge of the Superior Court**

By: _____
Court Clerk Supervisor
Dated: _4/29/2024_

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
April 29, 2024 10:00 AM
SX-2021-CR-00199
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

**People of the Virgin Islands v.**
**Darnley Petersen**

Case Number: **SX-2021-CR-00199**
Charges: **14 V.I.C. 2253(a) - Possession Of An Unlicense Firearm**
**14 V.I.C. 2253(E) - Unauthorized Possession of a Firearm in a Vehicle**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**

## NOTICE of ENTRY
## of
## Memorandum Opinion and Order

**To:** Robert J. Pickett, Esq.

Ronald E. Russell, Esq.

**Please take notice that on April 29, 2024**
**a(n)   Memorandum Opinion and Order Denying Motion to Suppress**

dated _____**April 26, 2024**_____ was/were entered
by the Clerk in the above-titled matter.

**Dated:** **April 29, 2024**

**Tamara Charles**

**Clerk of the Court**

By:

**Iris Cintron**
**Court Clerk Supervisor**